For the reasons assigned the judgment appealed from is affirmed.

McCALEB, J., concurs in the decree.

88 So.2d 218

Christopher **LANDRY**

v.

Hiram **FUSELIER** and Globe Indemnity Company.

No. 42385.

May 7, 1956.

Rehearing Denied June 11, 1956.

Carmouche & Martin, Lake Charles, for plaintiff.

Moss & Graham, Lake Charles, for defendant-respondent.

MOISE, Justice.

Under Article VII, Sec. 11, Louisiana Constitution of 1921, LSA, a writ was granted to review a judgment of the Court of Appeal for the First Circuit, 78 So.2d 442, which affirmed a judgment of the trial court denying plaintiff workmen's compensation insurance.

On April 14, 1953, Christopher Landry, a carpenter, was severely injured while assisting in the demolition of a building at Elton, Louisiana, owned by his employer, Hiram Fuselier, his son-in-law. The building rafters gave way and the building col-

lapsed, pinning plaintiff under the lumber. As a result, he is permanently and totally disabled.

Hiram Fuselier operates a service station and a grocery store, and he owns a rent house and a one-half interest in a saloon. He, likewise, owned the building which collapsed. He had leased it to the Army for use as a Trade School, at a rental of $100 per month, and when the Army discontinued the use of the building he decided to demolish it. To assist him in the demolition he employed plaintiff, who had previously worked on and off for him as a carpenter, and three other workmen. Part of the lumber was used to build a storeroom for his saloon and part to construct a new roof over his gasoline service station. He intended to use the remainder of the lumber to build a home, but this he never did. At the time of the trial he was still living in a rented house.

At the time of the accident Hiram Fuselier carried workmen's compensation insurance with the defendant, Globe Indemnity Company. In previous years the coverage had mentioned carpentry, and, therefore, he was under the impression that his policy covered his repair and carpenter work as well as his service station. In fact, a payroll audit statement, rendered after the accident, shows that the Globe Indemnity Company accepted a premium for wrecking of buildings. However, the policy classified his occupation as follows:

"Gasoline or Oil Supply Stations—retail—including Chauffeurs and their Helpers—N.P.D. with 'Automobile Garages, Sales or Service Agencies' or 8392 'Automobile Storage Garages.' "

The policy also contained the two following clauses:

"VI. This agreement shall apply to such injuries so sustained by reason of the business operations described in said Declarations which, for the purpose of this insurance, *shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said Declarations or elsewhere in connection with, or in relation to, such work places."* (Italics ours.)

"L. No condition or provision of this Policy shall be waived or altered except by endorsement hereon or attached hereto signed by the President, a Vice-President, or a Secretary of the Company; nor shall notice to any agent, nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver or change in any part of this contract. The personal pronoun herein used to refer to this Employer or to an injured employee or dependents, shall apply regardless of number or gender."

This policy was cancelled as of May 25, 1953.

Plaintiff was paid workmen's compensation until August 11, 1953, together with some of his medical and hospital bills. The insurer made full settlement with Richard Thomas, another workman injured in the same accident.

When the insurer refused to make any additional payments to plaintiff, he filed suit for total and permanent disability, penalties and attorney's fees against his employer and the Globe Indemnity Company. Proceedings against the employer were subsequently withdrawn.

Plaintiff contended that at the time of the accident he was doing carpentry work for his employer in his employer's trade, business or occupation in demolishing a building, and that he was entitled to recover workmen's compensation because the demolition was in connection with his employer's regular business of a filling station. He further argued that the very issuance of the policy entitled him to compensation.

The trial court, having first rendered judgment for plaintiff for total and permanent disability, reversed itself on rehearing and dismissed the suit. The Court of Appeal, by a divided court, affirmed the judgment of dismissal.

We have reviewed the record, and we believe that the dissenting opinion of Judge Tate correctly states the facts and the law applicable to this case. The ma-

jority opinion has placed undue emphasis on a self-serving declaration made by the employer to his own insurer, which he and his wife fully explained when placed on the witness stand under oath as witnesses for plaintiff. In his dissenting opinion, which we adopt as the opinion of this Court, Judge Tate states [78 So.2d 449]:

"The majority holds that the plaintiff did not bear his burden of proof that at the time of the accident some of the lumber from the demolition job was intended for repair of his employer's filling station business, admittedly hazardous under the compensation act. If such was the case, it is agreed that under Speed v. Page, 222 La. 529, 62 So. 2d 824, plaintiff would recover.

"In the present instance, plaintiff's employer, Hiram Fuselier, and his employer's wife, Mrs. Fuselier (the son-in-law and daughter of plaintiff, admittedly) testified that from the first before the accident some of the lumber was intended for repairs of the employer's filling station, although the testimony of Fuselier himself in this respect is somewhat ambiguous.

\*     \*     \*     \*     \*     \*

"However, this testimony is not contradicted, and I feel that the plaintiff has borne his burden of proof.

"This proof is disputed only by inference and innuendo.

"The fact that Fuselier's written statement (given to his adjuster at the

time compensation was being paid to plaintiff four months after the accident) did not mention, either to affirm or to deny, that such lumber was intended to be used in repairs of the filling station is to me singularly unpersuasive as indicating a contrary intention, especially since Fuselier and his wife both testified under oath and without contradiction that the statement was taken down by defendant's adjuster based on replies by the insured to the adjuster's questions and that they would have told the adjuster that some of the lumber was used and intended for business repairs if he had asked. Defendant further failed to produce the adjuster to subject him to cross-examination. As Mrs. Fuselier testified regarding the use of such lumber for business repairs, 'he did not ask me, but if he had looked he could have seen it was being used for repairs.'

"Because the employer did not utilize such materials for filling station repairs for eight months and after suit was filed, is not in my opinion determinative of his intention at the time of accident; any more than does his failure *to date* to use any of such materials for construction of a personal residence (including during the four months when compensation was paid and there was no suspicion that liability would be denied by his insurer) prove a contrary intention at the time of the accident.

It may well be that the employer's repair and construction activities occur when his other businesses are slack, or that he delayed the repairs or construction work for a multitude of other reasons.

"If it were the employer's intention at the time of the accident to utilize at least some of the materials from the demolished building for filling station repairs, it is difficult to say what other testimony plaintiff could have produced beyond the testimony of the employer and his wife. The fact that plaintiff is the father-in-law of the employer did not necessarily impart to him knowledge of his son-in-law's intentions as to every single facet of the latter's businesses.

"The plaintiff does not have the burden of proving beyond a reasonable doubt, but only by a preponderance of the evidence that his employer intended such lumber for filling station use. For us to ignore this sworn testimony of those people in the world most likely to know their own intention, is to taint sworn testimony with suspicion of perjury on mere speculation and inference.

"I further feel that determination whether the employment of this injured workman was subject to our compensation act need not in this case depend upon the employer's subjective intention at the time of the accident.

"It is proved without denial that for about three years, as shown also by audits made by the insurer itself for a portion of that time, Fuselier had paid insurance premiums to defendant, Globe Indemnity Company, based upon his being engaged *both* in the filling station business *and* in carpentry or the wrecking of buildings—in short, in the construction business. There is uncontradicted testimony that Fuselier had engaged construction employees, including plaintiff, on various other occasions to make repairs to all the business properties presently or formerly owned by him and to construct an addition to one of the rental buildings owned by him. In fact, simultaneously with demolition of the trade school a new storeroom addition was built by the same employees with some of the materials for another business property (a saloon) owned by the employer.

"Thus the construction activities of Fuselier involved in repairs and construction of his business premises were a regular part of his economic activities. These construction activities, hazardous per se under LSA–R.S. 23:1035 when engaged in as a business, were no less a part of the employer's trade, business, or occupation because used as a means of making money by the regular and recurrent repairs and additions to his own business properties, than if used as a means of making money by repairs for a price to the property of another.

"It seems to me that the words of Chief Justice Fournet in another of his forceful opinions as reported at Speed v. Page, 222 La. 529, 62 So.2d 824, at page 827, with regard to the jurisprudence (specifically referring to the Shipp and Caldwell cases cited by the majority in support of their conclusion), concerning an occasional worker employed in repairs, construction or demolition activities incident to the employer's regular trade, business or occupation, are applicable here:

" 'It would appear that much of this confusion and lack of harmony stems from pronouncements of this Court, made without citations of authority, without due consideration of the object and purpose of the Act, and in total disregard of the admonition of the lawmakers that its provisions should be liberally construed in favor of the employee.' "

Plaintiff is entitled to recover for total and permanent disability—that is, the sum of $30 per week for a period not exceeding 400 weeks, subject to credit for compensation previously paid for a period of 17 weeks ending August 11, 1953. He is also entitled to recover his medical expenses up to the statutory limit. According to the

record, defendant insurer has paid some of these expenses, but there is still due and unpaid the sum of $333. The fee of Dr. C. V. Hatchette, as expert witness for plaintiff, should be fixed at $50 and taxed as costs. Since the defendant insurer has not acted in an arbitrary and capricious manner, we do not think that this is a case where the penalties should be imposed.

For the reasons assigned, the judgment of the Court of Appeal for the First Circuit and the judgment of the Thirty-First Judicial District Court for the Parish of Jefferson Davis are reversed and set aside; and, it is now ordered that there be judgment in favor of plaintiff, Christopher Landry, and against the defendant insurer, Globe Indemnity Company, in the sum of $30 per week, during plaintiff's period of disability, not exceeding 400 weeks (beginning April 14, 1953), subject to credit for compensation paid for a period of 17 weeks up to August 11, 1953, with interest on past due weekly payments of $30 from the date each was due, and in the further sum of $333 for medical expenses, with legal interest from date of judicial demand; and, it is further ordered that the expert fee of Dr. C. V. Hatchette be fixed at $50 and taxed as costs. Defendant, Globe Indemnity Company, is to pay all costs.