ELLIS, Judge.
Plaintiff has appealed from the judgment of the lower court denying him compensation as for total and permanent disability as the result of an accident and *472 injury admittedly occurring to him on the 13th of November, 1954 while employed by his son as a carpenter in the construction of the former’s home.
There is no dispute as to the facts in the case, which in the main show that Vernon D. McMorris, hereinafter referred to as the employer, was a longtime employee of the Farmers Home Administration, in the capacity of the director for St. Helena Parish. The duties of his employment required that he act in a supervisory capacity in the construction of dwellings and other farm buildings throughout St. Helena Parish. It is shown that during the previous four or five years he had supervised the construction of approximately thirty dwellings and fifteen to twenty dairy barns and the same number of large dry sheds for the farmers of St. Helena Parish. This work also included the knowledge of plans as they were subject to his approval before a loan could be made. Such plans included the working up of the entire cost estimate, in other words, he was thoroughly familiar with the construction of homes, barns, and large dry sheds. The employer in the case at bar had an accumulated leave over a period of about four years and decided to build a home for himself. He applied first to the Bank of Greensburg for a loan which later was financed through the Veterans’ Administration, and taking advantage of the accumulated leave of absence from his regular duties with the F.H.A. he employed, during the construction of the house, some seven to nine workmen, among whom was the present plaintiff who was a carpenter by trade and was paid by the employer $2.50 per hour. It took some nine or ten weeks to construct the residence and it was during the building of the breezeway that the plaintiff fell and injured his left shoulder.
When the employer applied to the bank for the loan, he stated in the application that he was building it himself and he listed himself as a contractor and also took out workmen’s compensation, public liability, fire, storm, theft “and the ordinary insurances * * *. For my protection and the banks.” There is no dispute that the employer in this case did the work of an architect in planning his house, did his own work in connection with the securing of the loan, performed the same duties as a contractor, foreman and also did a large portion of the actual carpentry work.
It is further shown that the plaintiff was paid compensation from the date of the accident on Nov. 13, 1954, to August 13, 1955, at which time it was discontinued and hence the plaintiff is claiming penalties and attorney fecs.
The question to 'be decided in this case arises under that portion of our compensation law embodied in LSA-R.S. 23 :- 1035:
“The provisions of this Chapter shall apply to every person performing services arising out of and incidental to his employment in the course of his • employer’s trade, business, or occupation in the following hazardous trades, businesses and occupations: * * * )>
There is no dispute but that the plaintiff was injured while performing services incidental to his employment but defendant strenuously argues that they did not arise “in the course of his employer’s trade, business, or occupation * *
The defendant argues that the regular business of the employer was with the Farmers Home Administration and that the plaintiff’s work was not, therefore, part of the employer’s regular business. Defendant also argues that the employer was not in the construction business or the business of building houses, and paraphrases language used in the case of Prater v. Sun Indemnity Company, La.App., 38 So.2d 663, by posing the question: “Was the employer in this case engaged in the construction business *473 ‘as a trade, business or occupation so that the statute might apply.’ ?” In arguing 'the question posed, counsel for defendant correctly states that payment of compensation by the Home Indemnity Company in this case did not constitute a legal waiver or estoppel, citing LSA-R.S. 23:-1204 and the following cases: Fields v. General Casualty Co., 216 La. 940, 45 So. 2d 85; Cannon v. Michigan Mut. Liability Co., La.App., 66 So.2d 534; Smith v. Crossett Lumber Co., La.App., 72 So. 2d 895; Franz v. Sun Indemnity Co. of N. Y., La.App., 7 So.2d 636; Benjamin v. Standard Accident Ins. Co., 152 La. 874, 94 So. 428; Rutland v. General Accident Fire & Life Assurance Corp., La.App., 200 So. 486; Prater v. Sun Indemnity Co., La.App., 38 So.2d 663; Landry v. Fuselier, La.App., 78 So.2d 442.
Defendant in his brief further argues:
“There can be no liability on the Employer’s part in the present case because the Employer was not engaged in contracting or construction of houses as a trade, business or occupation. In Prater v. Sun Indemnity Co. of N. Y. [La.App.], 38 So.2d 663, 666, the Court again quoted with approval the language used in Shipp v. Bordelon [152 La. 795], 94 So. 399, 400, as follows:
“ ‘ * * * it is not enough that the employee shall be performing work of the character falling within the designated trade, business or occupations, but it must be done “in the course of the employer’s trade,” etc. in certain trades, businesses, etc. In other words, the work must be of that character, and the employer must be engaged in that line of work as a trade, business, or occupation in order that the act may apply.’
“The assured in the present case was constructing his first and only house at the time Plaintiff was injured. Also this house was to be and is now the assured’s personal residence. The house was never built for sale on the market or to make a profit. The assured’s sole intention and purpose was to provide himself and his family a 'better house in which to live. The insured had never made or lost a penny building or constructing houses. He was not in business of building or constructing houses. He was an employee of the Federal Government, had been for some time past and occupied the same status at the time of the trial. The mere fact that his work with the government made him familiar with the construction business does not change matters. A lawyer, a banker, an official in a building and loan association, a government official, a plant worker, a carpenter or many other persons, including a Judge might gain intimate knowledge of the construction business while following their own professions or occupations, yet it cannot be said that they thereby automatically become a contractor or have their own construction business when they undertake with help to repair, to make additions to, or to build their own personal residence.
“The Caldwell case [168 So. 112], held that an employer engaged in the manufacture and wholesale and retail sale of paint was not liable in compensation to an injured workman especially employed to do paper hanging in its retail store because the employer was not engaged in the paper hanging business.
“The Speed case, in an opinion written by Chief Justice Fournet, declared the holding in the Caldwell case was much to narrow and did not consider the fundamental principles and the historical basis of the Louisiana Workmen’s Compensation Act. At page 827 of 62 So.2d of the Speed case, we find the following language which was also used in the landmark case of Puchner v. Employers Liability Assurance Corp., 198 La. 921, 5 So. 2d 288:
“ ‘ “By that system the loss incurred as a result of the employee’s injury *474 is recognized ‘as an element of the cost of production to be charged to the industry rather than to the individual employer, and liquidated in the steps ending with consumption, so that the burden is finally borne by the community in general. * * *
“ ‘Clearly the cost of the maintenance of the theater building and equipment, including its repairs, is an operating or production cost of Page’s business or occupation. [Theater owner] * * * This forms an element of the cost of the operation of the theater that will be finally borne by the patrons.’ (Emphasis supplied.)
Professor Malone in his Louisiana Workmen’s Compensation Law and Practice sets forth the same sound reasoning as employed above. We quote from page 132:
“ ‘This special requirement expresses a part of the underlying philosophy of the compensation principle. The business of the employer is expected to bear the cost of the risk of injury to those who serve the business. Therefore, only so long as the work of the employee is a part of the business of the employer is the application of compensation justifiable. At times this is obvious. Although a factory operator may be required to satisfy the claims of those workers who are injured in his plant, it does not follow that he should be made liable without reference to fault for accidents that befall the yardman who uses a power mower at his home. Neither must he pay compensation to the handyman who repairs or remodels his house. In all such cases the work of the employee may be fairly characterized as hazardous, and the same is true of the business of the employer. The fact remains, however, that the employment is not a part of the business and for that reason alone compensation is not appropriate.’
“ * * * Paraphrasing the above basic principles, how can the element of cost of building one’s own home be passed on to the consuming public? How can this burden be finally borne by the community in general? How can this cost of production be liquidated in the steps ending with consumption?
“The employer in this case is not in business of building houses. His residence is not for sale. His house was not built with candies, cookies, and goodies and we have no Hansel or Gretal to take the part of the consuming public. Many persons of moderate means remodel, repair, renovate, or build their own houses, carports, barns without giving a thought to compensation insurance. If while doing the above these persons are held to> be in the construction business are in the business of repairing, painting, renovating, etc., then all these persons could have substantial judgments rendered against them in compensation.
“In the present case it is only where a person is engaged in the business of construction and building houses that he can be classed as a contractor or a person engaged in the construction business. * * *
“Since plaintiff’s attorney argues so strenuously that the employer was engaged in building houses, we can only state again that this was the first, last and only house that the employer ever built, that it was being built for his own personal residence, that he never intended to sell it and had never offered to sell it and had never intended to make a profit off of it.”
Let us consider defendant’s arguments. The case of Prater v. Sun Indemnity Co. of N. Y., supra [38 So.2d 666], is not controlling for the facts in that case and the one under consideration are much too different. In the Prater case a doctor had employed the plaintiff to make repairs to his residence, and the Court found as a fact that there was nothing in the record “to show that he had ever conducted repairs to *475 other properties other than the several homes he had owned in the past.” The court further commented:
“It would be indeed a disastrous doctrine which would hold that a homeowner, who undertakes to repair his own home and employs a workman or a skilled craftsman to do his work, may be liable in compensation for injuries sustained by such an employee. If the homeowner finds a slate loose or some other minor repair to be necessary and he attempts to have those repairs made by his own employee, if then it will be necessary that he secure compensation insurance and the result will be that he can make the repairs only at prohibitive cost. The framers of the statute contemplated no such result.
“Obviously the facts render this case inapposite.”
 The fact that the employer in the present case was constructing his first and only house is immaterial; also immaterial is the fact that the house was to be his personal residence and was not built for sale on the market or to make a profit, and that the employer’s sole intention and purpose was to provide himself and his family with a better house in which to live, and the fact that he had never made or lost a penny building or constructing houses.
In the very recent case of Meyers v. Southwest Region Conf. Ass’n of Seventh Day Adv., 230 La. 310, 88 So.2d 381, 384, the Supreme Court of Louisiana had occasion to consider the meaning of “ ‘trade, business or occupation’,” as well as to comment upon the argument of a business for profit. It stated:
“The primary question to be resolved in the case is whether or not a church corporation, being a charitable and non-profit organization, is a trade, business or occupation within the meaning of our workmen’s compensation law.[1]
“The Court of Appeal (79 So.2d [595], 597), was of the opinion that ‘trade, business or occupation’ does not comprehend a charitable or religious organization, since the purpose of the Act is to place the economic burden of employee injury initially on industry and ultimately upon the consumer. From this premise, it reasoned that non-profitable enterprises were not intended to be covered by the Act. Comments by Professor Wex S. Malone, in his able treatise on Louisiana Workmen’s Compensation Law and Practice, and cases from New York, California and South Carolina are said to fortify this conclusion.
“The comment of Professor Malone (found on page 34 of his work) is merely a statement of the economic principle upon which workmen’s compensation laws rest, i. e., the shifting of the burden of accidental injuries incident to employment from the injured employee onto the public through the employer. But this principle affords no ground for concluding that the compensation law does not apply to employers who do not engage in a trade, business or occupation for profit.[2] The Act, unlike the laws of some other states (e. g., New York Workmen’s Compensation Law prior to its 1928 amendment), does not, either in letter or spirit, limit its scope to businesses conducted for profit. On the contrary, its *476 comprehensive provisions would seem to encompass an unrestricted field of operation. For example, [LSA-] R.S. 23:1034 includes within the scope of the statute all public employees in the service of the State or other political subdivisions, incorporated public boards, etc. This, alone, manifests that it was never intended by the Legislature that the Act was to be confined to individuals and corporations engaged only in trades or businesses operated for profit.
“The Workmen’s Compensation Act, as we have many times said, is paternal legislation and is to be given a liberal construction by the Courts.[3] Hence, in determining whether a particular calling is within the purview of the law, the meaning of the language ‘trade, business or occupation’ shoud be considered in its broadest aspect so as to include all types of pursuits and we must assume that, if the Legislature intended to exclude any particular enterprise, it would have especially excepted it.
“The term ‘business’ has no definite or legal meaning. See Black’s Law Dictionary, 4th Ed., Page 248. It is a general term with widely variegated meanings, and has been defined as ‘that which busies, or engages time, attention, or labor, as a principal serious concern or interest’. Webster’s New International Dictionary, 2d Ed.[4]
“Thus we see that, by giving the term 'trade, business, or occupation’ the comprehensive meaning to which it is entitled, no difficulty is encountered in reaching the conclusion that the defendant church corporation is conducting a business. * * * ”
Although we see by the Supreme Court’s language in the above quoted Meyers case that the compensation act is not limited in its scope to businesses conducted for profit, it is obvious under the facts in the present case that the employer fully intended to make a profit in the nature of a saving of architect fees, cost of a contractor and/or foreman as well as a first class carpenter. Also it is well recognized that an employer may have a dozen trades, businesses or occupations. In the present case the employer may be said to have had two regular businesses. Although on leave he still would be considered as an employee of the Farmers Home Administration, and, secondly, the construction business. He was doing that which the Supreme Court in the Meyers case, supra, said constituted a business: “that which busies, or engages time, attention or labor, as a principal serious concern or interest.” The employer in the case at bar was personally busy, engaging his time, attention and labor at a principal serious concern or interest in the construction of a house which is specifically designated as a hazardous occupation. By every test he was engaged in the construction business and under the liberal interpretation and terms of the compensation act he would not be excluded from its provisions merely because the house was being built for his own use. Whether one intends to construct a house for rent, for sale or for personal use, when he actually does what the employer did in this case, acts as architect, contractor or foreman, and actual carpenter, and employs seven to nine other carpenters to assist him and devotes his entire time and attention to the building of the house which took nine to ten weeks, it constituted “a trade, business or occupation” within the meaning of the compensation act. The employer in this case did exactly what one engaged exclusively in building houses for profit *477 would have done, such as a general contractor in the construction business.
The arguments of both plaintiff and defendants before this Court have been somewhat altered in the case as compared to those in the lower court. For example, plaintiff cited Speed v. Page, 222 La. 529, 62 So.2d 824, and Landry v. Fuselier, La. App., 78 So.2d 442, Id., 230 La. 271, 88 So. 2d 218. While the general discussion of the law in Speed v. Page, supra, would be applicable in some respects, on the whole the case is inapposite, for there the court was concerned with the operator of an admittedly hazardous business in the conduct of that business undertaking repairs, which is not the case under consideration. However, the court did state in that case that whether the repairs were being made to the building housing the business or the equipment therein, when done by the person operating the hazardous business rather than having it done under contract, the employees came under the protection of the employer’s liability laws of the State. The same might be said of the present case, that where one engaged in the contract business, although it be for the purpose of building his own home as shown by the facts in the case at bar, rather than employing a general contractor, then his employees came under the protection of the employer’s liability law.
In Landry v. Fuselier, supra [230 La. 271, 88 So.2d 221], the Supreme Court reversed the judgment of the lower court as well as the majority of this court, based upon its finding that the Lower Court as well as the majority of this court had, in effect, committed manifest error in the facts upon which our judgment had been based. The Supreme Court, based upon the facts as found by it, held that one operating a hazardous business who demolishes a building to repair the building housing such a business, is liable in compensation to an employee injured in the demolishing process. A close reading of this decision would also show that the Supreme Court, in addition, held defendant liable on another ground. It adopted the minority opinion of this court in which it was stated:
“ ‘Thus the construction activities of Fuselier involved in repairs and construction of his business premises were a regular part of his economic activities. These construction activities, hazardous per se under LSA-R.S. 23:1035 when engaged in as a business, were no less a part of the employer’s trade, business, or occupation because used as a means of making money by the regular and recurrent repairs and additions to his own business properties, than if used as a means of making money by repairs for a price to the property of another.’ ”
Upon the facts found by the minority of this court and the Supreme Court, its holding was eminently correct. The same thought contained in the above quoted paragraph approved by the Supreme Court could be applied in the present case, viz., that the construction of the house in the present case which was hazardous per se under the law when engaged in as a business, was no less a part of the employer’s trade, business or occupation because used as a means of making money by saving money (expenses of a contractor, superintendent, foreman and architect) than if used as a means of making money by constructing a house for a price for another.
Generally speaking, however, the two cited cases are inapposite as well as other cases quoted in briefs to the Lower Court and this court, such as Shipp v. Bordelon, 152 La. 795, 94 So. 399; Caldwell v. George Sproull Company, 184 La. 951, 168 So. 112 (both in effect now overruled by the Supreme Court in Speed v. Page, supra); Puchner v. Employers Liability Insurance Company, 198 La. 921, 5 So.2d 288; Cannon v. Michigan Mutual Liability Company, La.App., 66 So.2d 534 (inapposite because of the facts); Brooks v. Smith, La.App., 41 So.2d 800; Jarrell v. Ewing, 7 La.App. 502.
*478 For the above and foregoing reasons we are of the opinion that the employer, Vernon D. McDaniel, was engaged in the trade, business or occupation of constructing a house and his employees were entitled to come under the protection of our compensation law.
There does not seem to be any serious dispute but that the evidence conclusively shows that the plaintiff is totally and permanently disabled as the result of the fall and injury to his left shoulder. In fact counsel for defendant does not argue to the contrary. A detailed discussion of the testimony on this point will serve no useful purpose.
Plaintiff is also claiming 12% of the total amount of the claim together with reasonable attorney fees as a penalty against Home Idemnity Company. Under the facts in this case we do not believe that the imposition of penalties would be justifiable.
For the above and foregoing reasons it is ordered that the judgment of the Lower 'Court be reversed, annulled and avoided and it is now ordered, adjudged and decreed that there be judgment in favor of the plaintiff Alex Baxter McMorris and against the defendant Home Idemnity Company, awarding compensation to the plaintiff for total and permanent disability in the full sum of $30 per week payable weekly beginning Nov. 13, 1954, for a period not to exceed 400 weeks, less compensation previously paid together with interest from the maturity date of each such payment and all costs, reserving to plaintiff his rights to claim additional medical expenses within the legal limits when and if needed.

 “[LSA-] R.S. 23:1035 provides, in part, that: ‘The provisions of this Chapter shall also apply to every person performing services arising out of and incidental to his employment in the course of his employer’s trade, ’business, or occupation in the following hazardous trades, businesses and occupations. * * * ’ (Emphasis ours.)”

. “Nor can it be said that it would be vio-lative of the economic principle of workmen’s compensation to hold that the law applies to charitable and religious organizations as well as to businesses conducted for profit. In both cases, the costs of the injuries are ultimately passed on to the public — specifically, to those supporting the charity or religious institutions in the first instance, and those who purchase the goods or services, in the latter.”

. “For our most recent expression see Wallace v. Remington Rand, Inc., 229 La. 651, 86 So.2d 522.”

. “ ‘Business’ is also specifically defined in Webster’s Dictionary as ‘(a) Oonstant employment; regular occupation; work; as, the business of living; business before pleasure, (b) Any particular occupation or employment habitually engaged in, especially for livelihood or gain, (c) A particular subject of labor or attention; a temporary or special occupation or concern. ‘Wist ye not that I must be about my Father’s business?’ Luke ii, 49.’ ”