MILLER, Judge pro tem.
Plaintiff, George W. Effler, brought this Workmen’s Compensation suit against his employer, Leon Edwards. He originally sought to recover $26 per week for a period of 100 weeks claiming total and permanent loss of sight in the right eye. By stipulation in open court, plaintiff reduced his demand to $22.75 per week for a period of 100 weeks. Plaintiff does not seek to recover any medical expenses.
The undisputed facts show that for some three weeks prior to October 18, 1957, plaintiff was assisting .two other employees in erecting stalls in an old barn located on defendant’s farm in Tangipahoe Parish, Louisiana. The barn was to be used to stable two race mares and their foals. Defendant, who had been engaged principally in breeding, raising and selling cattle, decided he would expand by venturing into the business of breeding and raising race horses. In order to make the alterations necessary to convert the barn already on the farm to a ■ building suitable for the stabling of race horses, defendant used the services of his regular employee, Robert Morris, and hired a Mr. Hart to assist Morris. It is not clear how plaintiff happened to start working on this alteration undertaking, however, it is certain that plaintiff was paid $35 per week by defendant for the time that he did work on this barn.
On October 18, 1957, plaintiff, after nailing a jack rafter to the barn, found the rafter to be too long and it became necessary to remove it in order to cut off the back corner. In an attempt to remove the rafter, plaintiff put a wrecking bar under it to prize it, and Mr. Morris put a claw hammer over the head of the nail to withdraw the nail. The nail however would not come out with the application of the usual force, so Morris hit the claw hammer head with another hammer. As the two hammer heads hit, a steel shiver flew off and hit plaintiff in the right eye. All of the medical testimony shows that due to *600 this trauma, plaintiff has permanently lost the total sight in his right eye.
Although defendant Edwards used power driven machinery in the operation of his farm, plaintiff Bffler never did operate, nor come in contact with such machinery.
Defendant was primarily engaged in livestock farming, however, the testimony shows that he required his farm hands to do a considerable amount of carpenter work. This is especially shown by the following testimony given by Mr. Edwards under cross-examination:
“Q. But its carpenter work, isn’t that correct? That’s the way we describe it? A. No, farm work.
“Q. Oh, that’s farm work rather than carpenter work, I see. So, when Mr. Effler was nailing that nail into that pole he was not a carpenter in your terminology, he was a farmer?
A. Farm work, you’ve got a certain amount of barn and fence building and what not, gates to build and fix. The farmer I got, he drives nails all the time.”
It is quite clear therefore that defendant never used the services of a carpenter contractor to do the needed carpentry work around his farm. He undertook all such projects himself, with the assistance of his farm hands.
The trial judge, after hearing the evidence, but without assigning written reasons, rendered judgment in favor of defendant, dismissing plaintiff’s suit. From that judgment plaintiff has appealed.
In his brief filed with this Court, plaintiff contends that although defendant’s business is not declared hazardous under the provisions of LSA-R.S. 23:1035, nor determined in fact hazardous under the authority granted to the courts by such statutory provisions, nonetheless, plaintiff, at the time he suffered the accidental injury on October 18, 1957, was engaged in performing services, hazardous in their nature, which services were incidental to and in promotion of defendant’s trade, business or occupation, and consequently he is entitled to the benefits of the Workmen’s Compensation Act. In support of this contention, plaintiff argues that since
“ * * * work in any of the building or metal trades in the erection, construction, extension, decoration, alteration, repair or demolition of any building or structural appurtenances 5¡! * * ”
is declared to be hazardous per se by LSA-R.S. 23:1035, the erection of stalls in defendant’s barn for the purpose of stabling defendant’s race horses constitutes a hazardous feature of defendant’s business.
Defendant, on the other hand, contends that even if it should be determined that the work which plaintiff was doing at the time he was injured was by its nature hazardous, which defendant denies, plaintiff still should be denied recovery because such employment was not in the course of the trade, business or occupation of the employer at all, but at best was merely incidental to defendant’s nonhazardous business operations. In support of this contention defendant cites Shipp v. Bordelon, 152 La. 795, 94 So. 399; McMorris v. Home Indemnity Insurance Company, 236 La. 292, 107 So.2d 645; and McDonald v. Ouachita Commercial Insurance Agency, La.App., 129 So.2d 296. Alternatively, defendant contends that even should plaintiff be held to have been performing services in the course of defendant’s business, plaintiff should still be denied recovery, since his employment did not bring him into frequent contact or exposure with machinery. In support of this alternate contention, defendant cites Boggs, et al. v. Great Atlantic & Pacific Tea Company, et al., 125 So. 2d 419 and Fruge v. White, La.App., 125 So.2d 426. In his answer filed in the district court, defendant denied that plaintiff’s employment and loss of sight in the right eye was due to this particular injury. However, defendant does not urge these de *601 fenses in his brief. At any rate, we find that both plaintiff’s employment and total loss of sight, as a result of this injury, have been proved by the evidence.
The issues, as thus presented, necessitate our ruling on the following questions:
(1) Was plaintiff’s employment within the course of defendant’s trade, business or occupation?
(2) If plaintiff’s employment was in the course of defendant’s trade, business or occupation, then does the carpentry work which plaintiff was performing at the time of the injury, constitute a hazardous feature of defendant’s principal business so as to bring the plaintiff under the Workmen’s Compensation Act?
In our opinion the first proposition posed for our consideration is now firmly settled. Although defendant Edwards is certainly not primarily engaged in the building trades, in that he does not build, repair or alter buildings under contract, or for sale at a profit, nevertheless constructing and repairing buildings are an important part and necessary expense of his economic activities. In the case of Speed v. Page, 222 La. 529, 62 So.2d 824, the Supreme Court held that when the maintenance of a building, including its repairs, is an operating or production cost of the owner’s business, which costs will eventually be borne by the public, then the maintenance and repairs of such building is in the course of the owner’s business. Certainly the erection of stalls in defendant’s barn was an operating and production cost of the business of breeding and raising race horses.
In the later case of Landry v. Fuselier, 230 La. 271, 88 So.2d 218, 221, the Supreme Court further held that an employee was within the course and scope of his employer’s business as a filling station operator while engaged in demolishing a building not remotely connected with the filling station business. The building belonged to the filling station owner who testified, as did his wife, that he intended to use the lumber from the demolished building to repair his filling station. As a fact, the filling station owner did, some eight months later and after the compensation suit was filed by the employer’s father-in-law, use some of the materials from the demolished building for repairs to his filling station. The following language from this decision is especially appropriate here:
“ ‘Thus the construction activities of Fuselier involved in repairs and construction of his business premises were a regular part of his economic activities. These construction activities, hazardous per se under LSA-R.S. 23:1035 when engaged in as a business, were no less a part of the employer’s trade, business, or occupation because used as a means of making money by the regular and recurrent repairs and additions to his own business properties, than if used as a means of making money by repairs for a price to the property of another.’ ”
The cases cited by defendant relative to this proposition are not applicable to the facts of this case. In the Shipp v. Bordelon case, supra, the defendant, a physician and gentleman farmer, hired plaintiff to repair a building he owned in the City of Alexandria, Louisiana. In that case the court found no connection whatsoever between the repair of city property and defendant’s trades, businesses and occupations of practicing medicine and farming. Likewise in McMorris v. Home Indemnity Insurance Company, supra, plaintiff was hired to construct a residence for an employee of the Farmers Home Administration. Building a residence could not possibly be passed on as a cost of defendant’s occupation as a Farmers Home Administration employee. The facts of McDonald v. Ouachita Commercial Insurance Agency, supra, distinguish it from the instant case and the Speed and Landry cases, in that there the plaintiff was hired as a cleanup man. There was no showing that the employee performed any carpentry work, unless the removal of a sign mounted on the exterior of the build *602 ing can be considered carpentry work. In the instant case and in the Speed and Landry cases, the employee was injured while performing carpentry work. However, in the McDonald case, our esteemed brothers of the second circuit, did state (129 So.2d at page 298) :
“The precise issue presented herein is whether an employee hired by one engaged in a non-hazardous business, trade or occupation for the specific purpose of assisting in making capital repairs is within the coverage afforded by the legislative enactment. This is answered in the negative by McMorris v. Home Indemnity Insurance Co., 1958, 236 La. 292, 107 So.2d 645, 646, * (also citing the Shipp case).
However, as noted above, in both the Mc-Morris and Shipp cases, supra, there was no connection between the property being repaired and the businesses of the employers. If the McDonald case holds that the repairs or capital improvements made by an insurance agency to the building housing its business and equipment is not in the course of the insurance agency business, then we believe that such decision is contrary to the Speed and Landry cases, supra. If the McDonald case ho2ds that “making capital repairs” to a building used in the course of a nonhazardous business is not a “hazardous feature” of the business, we are of a different opinion. The reasons for this conclusion are set out in that portion of this opinion dealing with the second question posed for our decision.
We conclude therefore that the erection of stalls in Edwards’ barn for the purpose of stabling race horses'was in the course of Edwards’ principal business which is breeding and raising race horses and cattle.
In discussing the second question posed by this case, we note that farming is not an “admittedly hazardous” business such as the Supreme Court found to exist in the cases of Speed v. Page, supra (involving the theater business), and Landry v. Fuselier, supra (involving the filling station business). Here we have an employee who was injured while in the course of his employer’s nonhazardous business while making carpentry alterations and repairs to his employer’s barn which was used in his employer’s business.
As stated by our learned brothers of the second circuit in the case of Troquille v. Lacaze’s Estate, La.App., 59 So.2d 505 at page 507 (modified on other grounds, 222 La. 611, 63 So.2d 139):
“We concede, as a general proposition, that the occupation of farming is not, per se, hazardous under the Workmen’s Compensation Statute, LSA-R.S. 23 :1021 et seq. But we call attention to the fact that the non-hazardous classification of this occupation or pursuit is undergoing steady and substantial encroachment upon such status by reason of the rapid march of progress in connection with farming operations, particularly in the use of motorized vehicles, etc. But the classification of a business is not in itself determinative of the question with which we are here concerned. A business may be classified as non-hazardous but its operation may involve what has been called ‘hazardous features’, and an employee engaged in the performance of duties requiring him to come in contact with such hazardous features is entitled to recovery of compensation, Storm v. Johnson, La.App., 23 So.2d 639; Rigsby v. John W. Clark Lumber Co., La.App., 28 So.2d 346. Obviously we are here dealing with a proposition which concerns the non-hazardous business of the defendant estate (farming) and yet which has, or possesses, certain hazardous features, namely the operation of motor driven vehicles.
% jfc ;[s >}{ ifc %
“We are further of the opinion in the instant case, notwithstanding the non-hazardous classification of the occupation or pursuit of farming, that the maintenance, repair, demolition and construction of large numbers of struc *603 tures or buildings is an additionally hazardous feature of the principal pursuit or occupation. * * * ”
In the case of Griffin v. Catherine Sugar Co., Inc., 219 La. 846, 54 So.2d 121, the Supreme Court held that although farming is not a hazardous business, it has hazardous features if motor vehicles are used in connection with its operations. Compensation was awarded to a cane-cutter who was being transported by his employer to the employee’s home when he was accidentally injured. He had been riding on a trailer which was pulled by a truck, and the accident occurred when he attempted to get off the trailer after the truck came to a stop.
In the case of LeBlanc v. National Food Stores of Louisiana, Inc., La.App., 118 So. 2d 500, although the retail grocery business is not of itself hazardous, the plaintiff recovered because her employment required her to come in contact with a “hazardous feature” of the business (an electric cash register), which caused the accident by giving her an electrical shock.
If an employee employed in a nonhazardous business is protected by the act because he comes in contact with (a hazardous feature) machinery which is declared hazardous by LSA-R.S. 23:1035, then an employee employed in a nonhazardous business who makes capital alterations and repairs (a hazardous feature) which are also declared hazardous by LSA-R.S. 23:1035 is entitled to the benefits of the act.
The cases of Boggs v. A & P, supra, and Fruge v. White, supra, cited by defendant, are inapposite for the reason that there was no contention in those cases that the claimant was working in a hazardous feature of their employer’s nonhazardous business at the time of the accident.
Providing proper shelter for the animals is a necessary cost of breeding and raising race horses. Defendant could either contract to have such work done or he could undertake it himself. To the extent that he used his own employees to do this work he realized a profit which accrued to his principal business. Therefore, the work of the employee in the building trade of altering or repairing defendant’s building (hazardous per se under LSA-R.S. 23:1035) performed for the sole benefit and profit of defendant’s principal business of breeding and raising race horses is a hazardous feature of defendant’s nonhazardous business. Since plaintiff was injured while performing services within the hazardous feature of the business, he is entitled to recover.
For these reasons, the judgment of the district court is reserved and set aside and it is now:
Ordered, Adjudged and Decreed that judgment be rendered in favor of plaintiff, George W. Effler, and against defendant, Leon Edwards, condemning defendant to pay unto plaintiff compensation at the rate of $22.75 per week, beginning October 18, 1957, for a period of 100 weeks, with 5% per annum interest on each installment from maturity until paid.
It is further ordered that the defendant appellee pay all costs including those of this appeal.
Reversed and rendered.