CULPEPPER, Judge.
This is a workmen’s compensation suit. Plaintiff contends he is permanently and totally disabled as a result of a heart attack causally related to his employment. Named as defendants are: Landreneau Enterprises, a partnership composed of the widow and heirs of Adraste Landreneau; Adraste Landreneau Gins, Inc., a Louisiana corporation wholly owned by said heirs; the succession of the said Adraste Landreneau, deceased. For purposes of trial and appeal this case was consolidated with Sam Richard v. United States Fidelity & Guaranty Company, La.App., 167 So.2d 840, in which a separate opinion is being rendered by us this date. In that case defendant is the alleged workmen’s compensation insurer of Landreneau Enterprises, Adraste Landren-eau Gins, Inc. and/or the estate of Adraste Landreneau. The district judge held all of the named defendants in both suits liable for permanent and total disability benefits, but denied penalties and attorneys fees. Defendants appealed. Plaintiff answered the appeal seeking penalties and attorneys fees. ! .
The substantial issues are: (1) Was there any causal relationship between the heart attack and the employment? (2) Was the construction of the house, on which plaintiff was working at the time of his heart attack, a part of the regular trade, business, or occupation of his employer, such that the injury sustained was covered by the workmen’s compensation act? (3) Should the-policy of insurance, issued by United States'Fidelity & Guaranty Company to Adraste Landreneau Gins, Inc. as the named insured,, be reformed so as to afford coverage to> Landreneau Enterprises and/or the estate-of Adraste Landreneau? (4) Did the policy-cover maintenance or construction of this-rent house? (5) Even if the insured defendants are not liable, is the insurer estop-ped to deny its liability?
An understanding of the facts requires: that we start with the business activities of Mr. Adraste Landreneau before his death; in 1960. He was engaged in several businesses in and around the town of Mamour Louisiana. He owned two cotton gins, as an incident to which he sold cottonseed, fertilizer and insecticides and also financed farmers; he owned a farm with about fifteen tenant houses for individuals who> farmed the land on a sharecrop basis; he raised cattle; he operated a rice irrigation well; he owned an insurance agency; he also owned four or five rent houses in the town of Mamou,
Mr. Adraste Landreneau died on July 13, 1960 leaving a widow and four children. His succession was opened on July 18, 1960 and his two sons, Mr. Louis Calvin Land-reneau and Mr. Joseph Gibbons Landreneau, were appointed co-administrators. These administrators managed the various interests of the estate until the heirs were-placed in possession by judgment dated March 24, 1961. Then the heirs decided they would separate the cotton gin from the remaining business interests. Accordingly, as of January 1, 1962, a corporation was formed under the name “Adraste Land-reneau Gins, Inc.” The two gins, as well as the cottonseed, fertilizer, insecticide and *829 farm financing businesses, were transferred to this corporation which was wholly owned by the heirs. On or about the same date the widow and heirs also formed a partnership known as “Landreneau Enterprises” for the operation of the remaining interests of the estate, including the farm properties and the rental properties in town. Separate sets of books and separate bank accounts were created for the corporation and the partnership.
Shortly after Mr. Adraste Landreneau’s death, the co-administrators had employed the plaintiff, Mr. Sam Richard. He was hired primarily to operate one of the gins during the ginning season. When his services were not needed for this purpose he worked for the estate (later the partnership) or for one of the heirs individually. Usually plaintiff worked full time at the gin from August through October and then, during November and December when the season was “winding up”, he worked only one or two days a week at the gin. When plaintiff worked at the gin he was paid by the gin corporation. When not working at the gin, he was paid respectively by the individual heir or the partnership for whom the work was done. Most of plaintiff’s off-season work was at a feed and seed store owned and operated by Mr. Calvin Landreneau individually. He also occasionally did work as a general handyman for the partnership. He maintained the irrigation well and had done repair and maintenance work on the rent houses in town and on the farm.
During 1962 Landreneau Enterprises owned two rent houses in Mamou which were in very poor condition. The partners decided to tear down the two old houses and use the materials to build one new rent house on their own land. Mr. Richard assisted in tearing down one of these old houses and was working as a carpenter’s helper in the construction of the new house at the time of his heart attack, about 11:00 a. m. on November 19, 1962.
The first issue is whether there was any causal relationship between plaintiff’s heart attack and the work he was doing at the time. The facts show that plaintiff went to work at about 7:30 a. m. feeling fine. He first worked on the subfloor, which involved handling lumber and nailing in a squatting position. At about 9:00 a. m. a truckload of 2x4’s arrived and plaintiff assisted in the unloading of this lumber. Then they started using these 2x4’s to erect studs for a partition. Plaintiff had climbed on top of the partition and, while straddling a single 2x4, was moving himself along and nailing boards, when he experienced the first symptoms of his heart attack. He testified he felt dizzy and nauseous, his throat got dry and he experienced shortness of breath. He decided to go home, but by the time he got there he felt very ill and went on to the hospital where Dr. Roderick Perron, a general practitioner in Mamou, diagnosed from plaintiff’s symptoms and an elector-cardiogram that he had suffered a coronary occlusion with myocardial infarction. It was Dr. Perron’s opinion that plaintiff had developed progressive arterial sclerosis over the years (Plaintiff was 49 years old) ; that the strenuous physical work, being done by him at the time of the attack, caused the heart to work harder, which in turn required a greater blood supply for the heart muscle the extra strain on the diseased vessel probably caused a small hemorrhage under a plaque which occluded the vessel and cut off the blood supply to that part of the heart muscle which died. It is clear that plaintiff is permanently and totally disabled as a result of this heart attack.
In support of their contention that causal relationship is shown, defendants rely principally on certain testimony of Dr. John Seabury, a heart specialist. Under direct examination Dr. Seabury testified, in response to a long hypothetical question giving the details of plaintiff’s activities immediately preceding the attack, that “ * * it is reasonably possible that his so-called heart attack was precipitated by this acti *830 vity.” However, under cross-examination Dr. Seabury testified that if the work which Mr. Richard was doing was in all respects the same that he did day in and day out he would be unable to relate the myo-cardial infarction to his employment.
We will not attempt to say whether these statements by Dr. Seabury are contradictory because, in any event, the facts here show that plaintiff was not doing work " * * * in all respects the same as he was doing day in and day out * * Just before his heart attack plaintiff was straddling a single 2x4, at a height of 8 or 10 feet above the floor, while handling and nailing another 2x4. He unquestionably was under a great physical strain and was performing strenuous physical labor. The evidence does not show that plaintiff did work as strenuous as this all day long “day in and day out.” From all of the evidence we think the only reasonable and fair conclusion is that the strenuous physical work being done by plaintiff was the immediate precipitating cause of this heart attack.
The law is clear that where the physical exertion being done at the time is a •contributing cause of the heart attack, a •causal relation is shown even though such physical effort was nothing more than that usually performed by the employee. In the recent case of Danziger v. Employers Mutual Liability Ins. Co. of Wis., 245 La. 33, 156 So.2d 468 (La.Sup.Ct.1963) the court restated the well established jurisprudence that:
“ * * * where the work requires physical effort and exertion and the employee’s heart or other organ fails or suffers functional impairment causing disability while the employee is engaged in the performance of his usual and customary duties, it is an ‘accident’ within the meaning of the compensation law and it is not necessary in such instances for the employee to show that the disabling ‘injury’ was the result of unusual physical effort. See Nickelberry v. Ritchie Grocer Co., 196 La. 1011, 200 So. 330; Hemphill v. Tremont Lumber Co., 209 La. 885, 25 So.2d 625; Fontenot v. Camden Fire Insurance Association, La.App., 124 So.2d 640 and other cases.”
Thus, in the present case, it is immaterial as a matter of law, whether plaintiff was doing unusually strenuous work. The only issue is whether the physical exertion was a contributing cause of the heart attack. We think the evidence clearly shows that it was.
The next issue is whether the construction of this rent house was a part of the regular trade, business or occupation of the employer within the meaning of LSA-R.S. 23:1035. The facts show that the Landreneaus owned four or five rent houses in the town of Mamou. Two of these houses were in bad condition so the heirs decided to tear them down and use the materials to construct one new house. Plaintiff had assisted in the demolition of one of the old houses and was working as a carpenter’s helper in the construction of the new house when he suffered his heart attack. The evidence also shows that the Landreneaus were not in tire construction business; that this was the first time they had ever built a rent house and that they did not have a regular construction or maintenance crew for any purpose.
 Our jurisprudence is well established that the workmen’s compensation act does not extend to injured employees unless the work they were doing at the time was a regular part of the business, trade or occupation of the employer. This requirement is separate from and in addition to the requirement concerning the hazardous nature of the business or the particular work which the employee was doing at the time. Caldwell v. George Sproull Co., Inc., 184 La. 951, 168 So. 112; McMorris v. Home Indemnity Ins. Co., 236 La. 292, 107 So.2d 645.
It is likewise well established in our jurisprudence that the construction or *831 repair of capital improvements for a nonhazardous business is not a regular part of such business. In the landmark case of Shipp v. Bordelon, 152 La. 795, 94 So. 399, the defendant, a physician, employed the plaintiff to make repairs on a rent house. The court held such repair work was not incidental to or in the course of the employer’s trade, business or occupation and denied workmen’s compensation. In the recent case of Edwards v. Stafford, 153 So.2d 106 (1st Cir.App.1963) Mrs. Stafford and her daughter owned a building which they rented to a lawyer as an office. They had employed plaintiff to do certain renovation and repair work to the property, during the course of which he was injured. The court thoroughly reviewed the jurisprudence following Shipp v. Bordelon, supra, and concluded that the rental of buildings was a non-hazardous business and the maintenance or repair of such buildings was not a regular part of such rental business. The plaintiff, a casual employee, was denied workmen’s compensation even though he was doing hazardous work at the time of his injury.
Exceptions to this general rule are found in cases where the repair work was so recurrent as to require a regular maintenance crew. Troquille v. Lacazes’ Estate, 59 So.2d 505 (2nd Cir.App.1952); Wood v. Peoples Homestead & Savings Ass’n., 177 So. 466 (2nd Cir.App.1937). But here, the repair of these few rent houses was not so recurrent as to require a regular maintenance crew. The Landreneaus did not have a regular maintenance or construction crew. For this particular job the partnership had hired two or three carpenters, and plaintiff as a carpenter’s helper, on a purely casual basis.- See the general discussion in “Workmen’s Compensation: The Coverage Of Incidental Repairs”, 11 Loyola Law Review 278.
Under this jurisprudence it is apparent that the Landreneaus’ business of renting these four or five houses in the town of Mamou was non-hazardous and the demolition or construction of such houses was not a regular part of the Landreneaus’ rental business.
Plaintiff first seeks to avoid the effect of the above cited jurisprudence by arguing that the recent case of Speed v. Page, 222 La. 529, 62 So.2d 824 has changed the law, or at least has indicated a trend in our jurisprudence, so that the construction, maintenance or repair of any business building is covered by the workmen’s compensation act
As we pointed out in the recent case of Segura v. LeLeux, 158 So.2d 393 (3rd Cir.App.1963, writ of certiorari denied), the Speed case, as well as the later case of Landry v. Fuselier, 230 La. 271, 88 So.2d 218, hold that where work is being done on a building which is to be used for a hazardous business, then such work is considered a regular part of the hazardous business. In the Speed case the building being repaired was to be used as a theater, an admittedly hazardous business. In the Landry case the work being done was in connection with capital improvements to a gasoline service station, also an admittedly hazardous business. These cases do not hold that construction or maintenance of capital improvements for a non-hazardous business (such as the rental of dwellings) is a regular part of such business. Thus, in the Segura case we held that the construction of an addition to a grocery store, was not a regular part of the non-hazardous business of operating such a grocery store. Hence, such work was not covered by the workmen’s compensation act.
Plaintiff next argues that the cases of Kern v. Southport Mill, 174 La. 432, 141 So. 19 and Dobson v. Standard Accident Ins. Co., 228 La. 837, 84 So.2d 210 are applicable here-. In the Kern case, plaintiff was employed by the mill as a pipefitter. One day he was directed by his superior, during his usual working hours, to go to the residence of one of the mill’s officers to do some work. Plaintiff was injured by an automobile while returning to the mill. The court held thát the’services rendered at the *832 officer's residence arose out of ,and were incidental to plaintiff’s employment at the mill, an admittedly hazardous business. 'The court stated the general rule as follows :
“Services ‘arise out of’ and are ‘incidental to’ an employment, whenever the employment calls for just such services. And whenever the employer ■calls upon the employee to render any •particular service, he, at least (that is to say, the employer himself), is in no position any longer to deny that the services thus requested arise out of and are incidental to the employment. Otherwise, by what right has the employee been called upon to perform them? ”
In the Dobson case the claimant was a 'truck driver and general handyman for a wholesale oil and gas distributor. One day, ■during his usual hours of work, plaintiff was sent to tear down a fence around his .employer’s private residence, during the •course of which work plaintiff was injured. The court held that the services being rendered at the employer’s private residence arose out of and were incidental to his •employment by the oil and gas distribution ■business, an admittedly hazardous business, .and quoted with approval the above stated .•general rule from Kern v. Southport Mill.
We think the Kern and Dobson cases are readily distinguishable from the present •matter. The facts here show that plaintiff worked about four months of each year as .an employee of Adraste Landreneau Gins, Inc. But, when not so employed, he worked most of the time for the feed and seed store owned individually by Calvin Landreneau. It was only on casual occasions that he worked for Landreneau Enterprises, and/or the estate, helping to repair or maintain the tenant houses on the farm, or the rental houses in town, or to maintain'the irrigation well or whatever other odd jobs were available.
During the month of November, 1962, when this particular accident occurred, the ginning season was “winding up”. The gin was operated only on Saturdays to process whatever cotton had accumulated during the week. Accordingly, at this particular period of time, plaintiff was working at the gin only on Saturdays. The rest of the time he, and several other casual employees, were working for Landreneau Enterprises in the construction of this rent house. This is certainly not the same as the situation which existed in the Kern and Dobson cases where, during his usual working hours, the claimant was sent out to perform services of a different nature. The accident did not occur during plaintiff’s regular working hours at the gin and he had not been ordered by the gin corporation to perform the services in question. Therefore, the services being performed by the plaintiff at the time of his heart attack did not arise out of, nor were they incidental to, his work for the gin corporation.
As to Landreneau Enterprises, and/or the Landreneau Estate, plaintiff was clearly not a regular employee of any hazardous business which they operated.
In essence, this case presents a situation where an employee divides his time between several different employers, i. e., the gin corporation, the partnership and Calvin Landreneau individually. The applicable rule of law is set forth in Malone’s, Louisiana Workmen’s Compensation Law and Practice, 1951 Edition, Sec. 58, page 66 as follows:
“One employee may divide his time between two or more employers. If each of these has separate work to be done and each exercises exclusive control oVer the employee during the time the latter is working for him, the employments should be designated as separate and successive. Under such circumstances the injured employee is concerned only with the employer for whom he was working at the time of the accident The fact that the claimant did not devote all his time to the *833 work of this employer may he important in determining the wage upon which compensation is to be based, but it does not create a joint employment so as to subject the other employers to liability.”
In Larson’s Workmen’s Compensation Law, 1952 Edition, Sec. 48.50, Vol. 1, page 721, it is stated:
“When there is a true dual employment, and the particular industry in which the injury occurs can be clearly identified, it is only logical, under compensation theory, that that industry should bear the compensation cost. So, when a watchman was hired by two companies (although in form the contract was made only by one), the company in whose service he was acting at the time of injury was held liable exclusively for the cost of that injury.”
It is our conclusion that neither Land-reneau Enterprises, nor Adraste Landren-eau Gins, Inc., nor the estate of Adraste Landreneau are liable to plaintiff for workmen’s compensation benefits.
As to the remaining defendant, United States Fidelity & Guaranty Company, the first issue raised by counsel is whether the policy of insurance which had been issued to Adraste Landreneau Gins, Inc., as the named insured, should be reformed so as to afford coverage to Landren-eau Enterprises and/or the estate of Adraste Landreneau, by whom this rent house was actually being constructed. We find it unnecessary to decide this very serious coverage question. Even if we were to find that the gin corporation, the partnership and the estate were all covered by the policy, there would still be no liability by the insurer, because we do not find, as plaintiff argues, that the insurer is estopped to deny liability under LSA-R.S. 23:1166, which reads as follows:
“When an insurance company issues a policy of insurance to an employer covering claims for injuries to employees that may arise within the scope of the employer’s business, the insurance company shall be estopped to deny liability on the grounds that the employment was not hazardous and during the period such insurance is in effect, claims for injuries occurring during such period by such employees against the employer or the insurance company shall be exclusively under the workmen’s compensation act. Added Acts 1958, No. 495, § 1.”
Plaintiff argues under the above quoted statute that the insurer is estopped to deny that either the business of the employer, or the work being done by the claimant, were hazardous. In other words, plaintiff argues that the defendant-insurer is estopped to deny that the business of renting houses is hazardous, and the work which plaintiff was doing, i. e., carpentry, was admittedly hazardous, therefore the insurer is liable.
We think the answer to this estoppel argument is that the defense herein urged by the insurer is not that the business of renting houses is not hazardous, but that the construction, demolition or repair of a house which is to be used for rental purposes is not “within the scope of the employer’s business” of renting dwellings. The issues of whether the business and the employment are hazardous are separate and distinct from the issue of whether the employment is a regular part of the business. See Malone’s Louisiana Workmen’s Compensation Law and Practice, 1951 Ed., pages 131-132, Section 102. The defense which the insurer has raised here is not that the business of renting houses is not hazardous, or that carpentry work is not hazardous, but instead that the construction or repair of a rent house is not a regular part of the business of renting such houses. The insurer is not estopped to make this defense. LSA-R.S. 23:1166 states that when a policy is issued to cover claims “ * * * that may arise within the scope of the employer’s business * * * ” the insurer is estopped to deny that the employment was *834 hazardous. For instance, in Bergeron v. New Amsterdam Casualty Co., 243 La. 108, 141 So.2d 832, a policy was issued to cover a cafe. A waitress, whose employment was non-hazardous, was injured. The court held LSA-R.S. 23:1166 applied (so as to restrict her recovery to workmen’s compensation and not tort). But if, for instance, a carpenter had been injured while constructing or repairing the cafe (a nonhazardous business) then clearly the insurer could have urged the defense that the construction or repair work was not “within the scope” of the business of operating a cafe. This same reasoning is applicable to the present case.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of all of the named defendants and against the plaintiff, rejecting his demands at his costs. All costs of this appeal are assessed against the plaintiff.
Reversed and rendered.