226 So.2d 482

**Joe PONTHIEUX**

v.

**Bill LINDSAY and Charles Lowther.**

No. 49549.

June 27, 1969.

Rehearing Denied Oct. 8, 1969.

Roy & Roy, Marksville, David Sheffield, Alexandria, Chris J. Roy, Marksville, for plaintiff-relator.

Gold, Hall & Skye, William E. Skye, Alexandria, for defendant-respondent-appellee.

HAMITER, Justice.

Involved in this cause is a claim for workmen's compensation benefits.

Charles Lowther, hereinafter referred to as the defendant, is now and has been for many years solely a life insurance agent. His father owned a certain piece of prop-

erty in Alexandria on which were several houses which had been converted into two and four-unit apartments. The elder Lowther lived in one and rented the others. During or about the latter part of 1965 Lowther sold his property, and in the act of sale he obligated himself to remove the buildings within a stipulated time, in default of which the vendee was authorized to have them removed at the vendor's expense (for which purpose an agreed upon sum—$10,000—was retained from the sale price).

Lowther contracted with another party for the sale and removal of the buildings, but this party defaulted on the agreement. The defendant then consulted with his father, relative to the latter's obligation to remove the improvements, and he decided that the buildings could be moved to another piece of property and their rental continued. To this end he purchased some land in his own name and contracted with one Bill Lindsay (the other person sued) to move the houses onto it, and also with one Neilson Bonnette to cut the houses in preparation for their removal. Bonnette employed Joe Ponthieux, the plaintiff herein, as a laborer to assist in the cutting operation.

While so employed plaintiff fell from the roof of one of the buildings and was injured. The instant suit was filed against the defendant and Lindsay to recover workmen's compensation benefits for disability allegedly resulting from the fall.

For procedural reasons, not necessary to detail here, a judgment on the merits of the claim against Lindsay was delayed. Ultimately the demand was rejected by a judgment which is now final, and Lindsay is no longer a party to these proceedings.

The trial court dismissed plaintiff's claim against this defendant on the merits, and its judgment was affirmed on appeal. 216 So.2d 407. We granted certiorari at the instance of plaintiff. 253 La. 68, 216 So.2d 548.

Presented for our consideration is only the question of defendant's (Charles Lowther's) liability for compensation benefits. The plaintiff contends that it attaches by virtue of LRS 23:1061 which provides: "Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation for which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; * * *."

The issue to be determined is whether the defendant, the so-called principal, must pay compensation benefits for injuries sustained by the employee of his independent contractor, Bonnette. And for the purpose of determining that issue we have studied the record, and we have made the following factual conclusions.

We are of the opinion that the Court of Appeal correctly found that the defendant had no intention of moving and relocating the houses as a business venture for his own personal benefit. Our thought is that the circumstances support his uncontradicted testimony that all of his efforts were bent toward assisting his aged and ill father (who has since died) and his mother.

When the removal occurred the time given the elder Lowther was running out, and the defendant undertook the project for his father (who was physically unable to attend to the matter himself) in an attempt to avoid the latter's suffering a financial loss. The course pursued, he felt, would prevent a forfeiture of the amount retained by the vendee, and when completed it would provide a source of income for his parents. When half of the units were ready for occupancy (there would be twenty in all) he transferred title to the land and the improvements to his mother who, as defendant expressed it, "put up what money was used in the thing. I had no money myself."

Under these circumstances we do not hesitate to conclude that the defendant was not in the business of moving, constructing, restoring or repairing houses. This was merely a one-time operation entered into by him to assist his father.

Plaintiff, however, contends that the record shows that the defendant entered into the negotiations as a business venture from which he himself intended to realize a profit by renting the completed units. And he argues that, therefore, his actions in moving and reconstructing the buildings constituted his entering the trade, business or occupation of house moving, construction, and repair of buildings, and that he is liable for compensation benefits, under LRS 23:1061, just as if he had hired the plaintiff himself. This is obviously not so. The defendant's only business was that of an insurance agent. He had never undertaken the moving, repair or construction of buildings either before or since this operation, and he testified that he knew nothing of the details of such a business. If, indeed, he intended to use the buildings for his own profit the only business he would have been engaged in was that of the rental of dwellings, and this is not a hazardous occupation.

Nevertheless, the plaintiff insists that when a person employs contractors to perform work requiring the hiring of laborers to engage in a hazardous engagement, and

it inures to the benefit of his otherwise non-hazardous business, such work is part of his regular occupation which becomes hazardous; and that, consequently, the principal is liable for compensation benefits to the employees.

It is, of course, well established that the purpose of LRS 23:1061 is to prevent the evasion of the compensation provisions of the law by contracting out part of the principal's regular and hazardous occupation or his contractural obligation and, therefore, he is not liable in compensation unless he would have been obligated had he himself undertaken to do the work and hired the injured employee himself. This is pointed out, because in some of the cases hereinafter cited a plaintiff-employee was engaged to do hazardous work by an independent contractor, while in others he was hired to do it by the principal himself.

An examination of the cases reveals that the arguments presented by the plaintiff herein are not new. They have been urged in this court on several occasions and also in the various Courts of Appeal. Consistently they have been rejected.

One of the earliest of such cases is Shipp v. Bordelon, 152 La. 795, 94 So. 399 (1922), and it is a leading decision on the subject. Therein the opinion shows that the plaintiff was injured while doing repair work on a house on the plantation or farm of the defendant who was a practicing physician. (In a per curiam denying a rehearing the court observed that the house involved was located in Alexandria, but that such circumstance made no difference in the result.) In holding that the defendant was not liable for compensation benefits the court made the following observations which have been adhered to and quoted on innumerable occasions: " * * * it is not enough that the employé shall be performing work of the character falling within the designated trades, businesses, or occupations, but it must be done 'in the course of the employer's trade,' etc., in certain trades, businesses, etc. In other words, the work must be of that character, *and the employer must be engaged in that line of work as a trade, business, or occupation,* in order that the act may apply. It is not pretended that the defendant was engaged, as a trade, business, or occupation, in the building, repairing, etc., of houses or other structures, but merely found it necessary to repair a certain building on his farm. If it be said that he was engaged in farming as an occupation, and the work was being performed in connection therewith, or was an incident thereto, then reference to the statute discloses that agriculture or farming is not one of the occupations specifically named as hazardous or that is in its nature hazardous.

\* \* \* \* \* \*

"We agree with counsel that it is not required, under our law, that the business of the employer must be exclusive, for one

may have a dozen trades, businesses, or occupations. But, to become liable for compensation, he must be actually so engaged, *as a trade, etc., and it is not enough that the work done should be hazardous if it be not also incident to or in the course of the trade, business, or occupation of the employer which is within itself hazardous under the statute.* \* \* \*" (Italics ours)

In Rayburn v. De Moss, 194 La. 175, 193 So. 579, citing Shipp v. Bordelon, supra, we denied compensation to an employee who was injured while engaged as a carpenter to help defendant in the construction of a barn on the latter's dairy farm. In Caldwell v. George Sproull Company, 184 La. 951, 168 So. 112 we held that the plaintiff employed in papering the retail paint store of the defendant was not working in the course of its business of selling paints, and that it was not engaged in papering or painting houses because it used the services of the employee therein to do work in its store.

The Shipp decision was also cited with approval in McMorris v. Home Indemnity Insurance Company, 236 La. 292, 107 So.2d 645, wherein we held that an employer building his own home was not liable for compensation to a carpenter injured while working on the construction. See also Fields v. General Casualty Company of America, 216 La. 940, 45 So.2d 85, where we again cited the Shipp case and observed in a footnote that "It is well settled that it is the nature of the employer's business *and not the particular work done by the employee* which is the determinative factor in suits for compensation." (Italics ours)

Innumerable decisions of the various Courts of Appeal have followed and applied such interpretation of the provisions of the compensation statute. Thus, in Lay v. Pugh et al., 9 La.App. 183, 119 So. 456 the plaintiff was injured when performing his duties as a carpenter in repairing and remodeling a building owned by the defendant to be used as a hotel and restaurant. The restaurant was to be operated by a relative and the defendant would share in the revenues. It was urged by plaintiff that the defendant was engaged in the business of construction or repairing of buildings. The court held that he was not, and it denied compensation benefits by saying: "\* \* \* He [the defendant] was asked and admitted that the building he was erecting was being put up as a restaurant which was to be operated by Mugnier, his wife's nephew. He admitted he had been in the paving business 'but not in buildings.' Such evidence which appears from the foregoing is far from showing that defendant was engaged in the erection, repair, or demolition of buildings or structural appurtenances as a 'trade, business or occupation.' It is probable that he expected to derive some profit in the hotel which was to be operated by Mugnier. This simply indicated that he was going in-

to a business venture, but such an enterprise could not possibly be taken as proof that defendant was following building business as a trade or occupation within the intendment of the statute. * * * It was a private undertaking by defendant, from which, it may be true, he expected to derive future profits from the revenues of the restaurant, but there is nothing to show, or even to indicate, that the building had been constructed by Pugh as an employer in a line of work as a trade, business, or occupation. No such proof having been established, plaintiff had no right to recover compensation against Pugh as was decreed below."

We denied certiorari in Lay v. Pugh, supra, just as we did in the following cases where the same result was reached under similar circumstances, the same contentions as those by the present plaintiff having been made: White v. Equitable Real Estate Company, 18 La.App. 714, 139 So. 45 (works being performed on building to be leased by the owner who owned one or more buildings which it leased for profit). Weaver v. Mutual Building and Homestead Association, La.App., 195 So. 384; Segura v. Leleux, La.App., 158 So.2d 393 and Washington et al. v. Harvey et al., La.App., 164 So.2d 379. See also McDonald v. Ouachita Commercial Insurance Agency, Inc., et al., La.App., 129 So.2d 296; Effler v. Edwards, La.App., 142 So.

2d 599 and Edwards v. Stafford, La.App., 153 So.2d 106.

Plaintiff relies principally on Lyons v. Pirello, La.App., 194 So.2d 147 (cert. den.). Even if it were authority for the principle cited, we would have to reject it in view of the mass of jurisprudence to the contrary. But we do not find that it supports plaintiff's position. To the contrary, in its opinion the court cited a number of the cases referred to above and recognized as correct the principle on which they were founded; but it distinguished them on the facts before it, because the defendant in the Lyons case actually pursued more than one occupation. In addition to being a realtor he also constructed, supervised construction, repaired, and restored buildings for persons other than himself.

We conclude, therefore, that if it can be said that this defendant was engaged or intended to engage in any occupation (other than that of an insurance agent) it was the business of leasing residential property. That is a non-hazardous occupation, and the mere isolated use of a casual contractor to move and repair some rental units did not constitute his doing business as a contractor or repairer of buildings. Nor did it convert his otherwise non-hazardous business into a hazardous one.

In view of this conclusion we hold that the defendant was not liable for compensation benefits to his contractor's employee.

If social or economic conditions have changed to such a degree since the enactment of the workmen's compensation law so as to warrant a different result herein that is a matter which addresses itself to the Legislature.

For the reasons assigned the judgment of the Court of Appeal is affirmed at plaintiff's costs.

BARHAM, Justice (dissenting).

R.S. 23:1061 provides in part: "Where any person (in this section referred to as principal) undertakes to excute any work, which is a part of his trade, business, or occupation * * *, and contracts with any person * * * for the execution * * of the whole or any part of the work * * *, [he] shall be liable to pay to any employee employed in the execution of the work or to his dependent, * * * compensation * * * [as] if the employee had been immediately employed by him * * *."

We have said, and it is certainly true in this case, that the determination of whether the work in which the employee is engaged is a part of the principal's trade, business, or occupation is largely a question of fact. The majority and I differ sharply on the facts in this case. The majority is apparently largely persuaded to reach its result by a belief that the defendant Lowther was involved in relocating, rebuilding, and constructing multiple apartment buildings only

for the benefit of his "aged and ill father" and his mother, and not for his personal benefit. Upon this basis it determines: "Under these circumstances we do not hesitate to conclude that the defendant was not in the business of moving, constructing, restoring or repairing houses. This was merely a one-time operation entered into by him to assist his father." Although I am not convinced that a personal derivation of profit is an overriding or even a major consideration in defining "trade, business, or occupation", I find as a fact from the record that the defendant's motives were not solely altruistic in this operation.

The majority says that its finding is based upon the defendant's uncontradicted testimony. While no other witness contradicts the defendant as to his motives, his own testimony given upon three different occasions is filled with contradiction in this respect. I am constrained to conclude that he intended to derive personal income or profit by reason of the construction of the apartment units.

In a more important particular, I differ with the majority's factual determination "that if it can be said that the defendant was engaged or intended to engage in any occupation (other than that of an insurance agent) it was the business of leasing residential property". Repeatedly the defendant stated that he was constructing these units for either sale or rent, and he made numerous attempts to sell the project. As

units were completed during the course of construction, he rented the apartments and received the revenue therefrom. I find no testimony that this revenue inured to the benefit of anyone other than the defendant.

This defendant was involved for more than a year in the complicated enterprise of removing, relocating, and redesigning buildings in order to complete a 20-unit apartment complex. He hired or contracted with at least eight persons for work on this project, some of whom employed several workmen. He paid for most of the materials separately from any contract price with these individuals.

The majority appears to be overly concerned with the nebulous intentions of the defendant, while the record itself is replete, from the defendant's very words, with facts that clearly establish the occupation or business in which he was actually engaged in connection with this project. In addition to being an insurance agent, Lowther was for a considerable time engaged in the hazardous occupation or business of removing, building, and constructing apartment units.

I reach this result under the facts of this case and do not find such a determination to be in conflict with any prior jurisprudence. The case is simply distinguishable on its facts from all the cases relied upon by the majority.

The majority has extended to the present case a strict, harsh, inflexible application of the definition of a "principal" by making what I believe to be a speculative and unrealistic factual conclusion. I respectfully dissent.

BARHAM, J., is of the opinion a rehearing should be granted.