HOOD, Judge.
This is a workmen’s compensation suit instituted by John M. Broussard against James Adams, d/b/a Adams Fence Company, and Dewey DeVillier. Judgment was rendered by the trial court in favor of plaintiff and against defendant Adams for a part of the compensation benefits claimed, plus penalties and attorney’s fees. Plaintiff’s demands against the remaining defendant, DeVillier, were rejected. Plaintiff appealed.
The sole issue presented is whether plaintiff was injured while performing work for defendant DeVillier, which was a part of the latter’s trade, business or occupation, and thus whether DeVillier is liable to plaintiff for compensation benefits under LSA-R.S. 23:1061.
Broussard sustained an injury to his right eye on February 14, 1970, while he was assisting in building a fence on De-Villier’s property. As a result of that accident he suffered the permanent loss of vision in that eye. This suit was filed on February 11, 1971.
DeVillier owned and operated a furniture and appliance store in Cottonport, Louisiana, when this accident occurred. About three years prior to that time he purchased a large tract of land in that community, and in June, 1969, he subdivided it into 69 lots. Shortly thereafter he began the construction of rent houses on some of those lots. He acted as his own general contractor in completing this project. He performed all of the electrical wiring and plumbing work himself. He engaged carpenters and bricklayers and paid them for the times they worked. He entered into contracts for the performance of some parts of the construction, such as the laying of concrete driveways, and he had some of his employees in the furniture and appliance store assist in constructing these houses. The wages of the carpenters and bricklayers and all of the last mentioned employees were paid by DeVillier, and he reported those payments on his tax returns.
*915 The construction of six houses on this property had been completed, and all of them had been rented and were occupied by tenants, by February, 1970. Several other houses were under construction at that time. On or shortly before February 12, DeVillier entered into an oral contract with defendant Adams, a fence contractor, under the terms of which the latter was to construct chain link fences around the back yards of three of the completed residence buildings. The fences were to be constructed for a fixed price, and all parties agree that Adams acted as an independent contractor in performing that work.
Adams employed plaintiff to assist in erecting these fences. On February 14, 1970, while plaintiff and a fellow employee were attempting to place a tension wire at the bottom of a fence, the wire whipped backward, striking plaintiff’s right eye, causing the injury which forms the basis for this suit. DeVillier did not have any personal contact with plaintiff prior to the accident. He did not employ Broussard directly, and he never paid any wages or compensation benefits to him.
After this accident occurred, DeVillier completed the construction of five additional houses, and all of them were rented. At the time of the trial a total of eleven houses had been completed, all of which were occupied by tenants.
DeVillier testified that his original plan was to donate a house to each of his eight children, and to deposit the proceeds from the rent of the donated homes in the savings accounts of his children to be used later for their education. Pursuant to that plan, he executed an act of donation on April 4, 1971, transferring a house to each of his eight children. Since that time the savings account of each child has been credited with the rent from the building donated to him. Plaintiff has continued to receive the rent from the remaining three houses which were not donated.
The donation of the houses to De-Villier’s children took place more than one year after the accident occurred, and about two months after this suit was filed. Prior to the execution of the act of donation, DeVillier received the rents from all of the houses which he had constructed. He testified that in the. future “we may have to use some of the rent money to live off of possibly, if business continues to decline like it has.”
DeVillier originally planned to borrow $100,000.00 to construct concrete streets and a sewer system in the subdivision, but the city refused to accept the street plan. He, however, constructed some drainage ditches in the subdivision, despite his failure to obtain the loan. He has sold ten or twelve lots in the subdivision, and he plans to sell other vacant lots. He does not plan to sell any of his rent houses, and is undecided as to whether to build other houses for rental purposes.
Plaintiff alleges that DeVillier was engaged in the general construction business, including the building and construction of houses for resale and rental purposes, and that such a business is hazardous within the meaning of the Workmen’s Compensation Act. He contends that, although he was employed by an independent contractor, his eye injury was sustained while he was performing work in defendant’s “trade, business or occupation,” and that he is entitled to recover compensation benefits from DeVillier under the provisions of LSA-R.S. 23:1061.
The pertinent part of LSA-R.S. 23:1061 provides:
“Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or *916 to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.”
The trial judge concluded that DeVillier was engaged in the business of “renting residential property rather than constructing or repairing buildings,” and that the use of the fence contractor to install chain link fences around his units did not convert his otherwise non-hazardous business into a hazardous one. Judgment thus was rendered rejecting plaintiff’s demands against DeVillier, although he was permitted to recover from his employer, Adams.
Plaintiff contends that the trial court erred in finding that plaintiff was engaged in the business of “renting residential property,” a non-hazardous occupation, rather than in the business of constructing buildings, a trade or business which is specifically declared to be hazardous in the Workmen’s Compensation Act. LSA-R.S. 23:1061.
In applying LSA-R.S. 23:1061, our courts have held consistently that a principal may be engaged in several trades or businesses at the same time, some of which are hazardous and others are not. Shipp v. Bordelon, 152 La. 795, 94 So. 399 (1922); Lyons v. Pirello, 194 So.2d 147 (La.App. 1 Cir. 1967) ; McMorris v. Home Indemnity Company, 236 La. 292, 107 So. 2d 645 (1959). When such a circumstance exists, and a claim for compensation is made against the principal, it become necessary to determine whether the work was being performed in a hazardous business of the principal, since LSA-R.S. 23:1061 provides that the principal is obliged to pay only such compensation as “he would have been liable to pay if the employee had been immediately employed by him.”
In Shipp v. Bordelon, supra, our Supreme Court said:
“We agree with counsel that it is not required, under our law, that the business of the employer must be exclusive, for one may have a dozen trades, businesses, or occupations. But, to become liable for compensation, he must be actually so engaged, as a trade, etc., and it is not enough that the work done should be hazardous if it be not also incident to or in the course of the trade, business, or occupation of the employer which is within itself hazardous under the statute.”
In the instant suit, the evidence shows that DeVillier was engaged in two separate trades or businesses. One was the operation of a furniture and appliance store, and the other was the development of a subdivision, including the building and renting of houses. It is immaterial whether the operation of the store is or is not hazardous, because the erection of fences around defendant’s rent houses clearly was not a part of that trade or business. The important issue presented is whether the other business in which DeVillier was engaged —the development of a subdivision — was hazardous, and if so, whether plaintiff was performing work which was a normal and integral part of that business.
The question of whether a person who constructs his own building, to be rented or used commercially, does or does not become engaged in the construction business is a factual issue which must be determined according to the facts of each case. Doss v. American Ventures, Inc., 261 La. 920, 261 So.2d 615 (1972); Lyons v. Pirello, supra; Foster v. Western Electric Company, 258 So.2d 153 (La.App. 2 Cir. 1972).
In Doss v. American Ventures, Inc., supra, the defendant undertook to reconstruct *917 a commercial building which had been demolished by a hurricane. It did not employ a general contractor, but instead its officers supervised the work performed by the various subcontractors. Plaintiff, who was employed by a subcontractor to paint the reconstructed building, was injured while performing those duties. Prior to the destruction of the building, defendant’s only business was owning and renting that structure. Our Supreme Court held that under those circumstances the defendant was engaged in the business of construction work, and that it thus was liable to plaintiff for compensation benefits under LSA-R.S. 23:1061.
In Landry v. Fuselier, 230 La. 271, 88 So.2d 218 (1956), defendant operated a service station and a grocery store, and he owned a rent house and an interest in a saloon. He undertook to demolish another building which he owned and to use a part of the lumber from that structure in repairing or making additions to his saloon and service station. He employed plaintiff to assist in this activity, and plaintiff was injured while doing so. The defendant on other occasions had engaged construction employees to make repairs to his business properties. The Supreme Court held that the defendant had engaged in these construction activities as a part of his trade, business or occupation, “because used as a means of making money by the regular and recurrent repairs and additions to his own business properties,” and that he thus was liable to plaintiff for compensation benefits.
In O’Brien v. Columbian Carbon Company, 109 So.2d 285 (La.App. 1 Cir. 1959), the defendant had constructed a carbon black plant for its own use. The court held that this construction work constituted an “integral part of the defendant’s operations such as is intended by the provisions of LSA-R.S. 23:1061.”
Finally, in Lyons v. Pirello, supra, the defendant was primarily a realtor and lessor of improved real estate, a non-hazardous business. He undertook to construct a 20-apartment complex for himself, however, and the evidence indicated that he previously had engaged in similar construction projects for himself. Our brothers of the First Circuit Court of Appeal held that he was “in fact engaged in the construction, repair, restoration and renovation of buildings as a business, trade or occupation”, and that plaintiff, a carpenter employed by him, was entitled to recover compensation for an injury sustained during the course of his employment.
We have reviewed the evidence in the instant suit with these cases in mind, and we conclude that DeVillier was in fact engaged in the trade, business or occupation of constructing houses for rental purposes. Prior to the time plaintiff was injured, DeVillier purchased a tract of land, had it subdivided into lots and constructed six residence buildings on it, all of which were being rented. After the accident occurred, he completed the construction of five additional rental units, and all of them were occupied by tenants by the time the case was tried. DeVillier acted as his own general contractor in constructing these houses, and he, in fact, performed a substantial part of the construction work himself. These facts convince us that De-Villier was engaged in the business of constructing houses for profit.
We distinguish the case of Ponthieux v. Lindsay, 254 La. 647, 226 So.2d 482 (1969), which was cited and relied on.by the trial court. The defendant in that case, a life insurance agent, undertook to relocate some rental houses for his aged father and mother, who were obligated to remove them within a stipulated time. To do this, the defendant engaged one man to cut the buildings and he engaged another to move them. The court found that defendant had no intention of moving and relocating houses as a business, that he realized no profit from such an operation, and that this was a “one-time operation entered into by him to assist his father.” The court *918 stated that “the mere isolated use of a casual contractor to move and repair some rental units did not constitute his doing business as a contractor or repairer of buildings.”
Defendant DeVillier has cited a number of cases involving the repair or remodeling of buildings, in which the courts have held that the owner was not engaged in the business of constructing or repairing such structures. We distinguish most of the cited cases for the same reasons which we assigned in distinguishing the Ponthieux case. We feel that the law was correctly applied in the cases which have been discussed.
Defendant, argues alternatively that the erection of a fence around the back yards of three rent houses, after the construction of the houses had been completed, did not constitute an integral part of defendant’s business of constructing houses for rental purposes.
Whether a contractor’s activity is a part of his principal’s trade, business or occupation is primarily a question of fact. A contractor’s activity is considered to be a part of his principal’s trade or business where the activity is a “normal and integral” part of the principal’s business. Vizena v. Travelers Insurance Company, 238 So.2d 238 (La.App. 3 Cir. 1970); Meche v. Farmers Drier & Storage Company, 193 So.2d 807 (La.App. 3 Cir. 1967); Foster v. Western Electric Company, supra; Broussard v. Heebe’s Bakery, Inc., 254 So.2d 284 (La.App. 4 Cir. 1971).
We believe that the erection of fences around the back yards of some of the rent houses constituted a normal and integral part of DeVillier’s business of constructing houses for rental purposes. Although the fences may not be indispensible to the use or rental of such houses, the same may be said of the construction of driveways, front walks, patios and swimming pools. We think all such facilities properly may be considered to be part of the total plan of a residence building constructed for rental purposes. Our conclusion is that plaintiff’s work in constructing fences for these houses constituted a normal and integral part of the work required in order to make the buildings complete for rental purposes.
Plaintiff’s claim for penalties and attorney’s fees against DeVillier are denied. In order for a plaintiff to recover penalties and attorney’s fees, he must show that the defendant’s refusal to pay compensation was arbitrary or capricious. Pharr v. Insurance Company of North America, 200 So.2d 365 (La.App. 4 Cir. 1967). In this instance plaintiff’s demand against DeVillier presented several difficult questions of law, and we find that the latter’s failure to pay compensation when demanded was neither arbitrary nor capricious.
Defendant Adams did not appeal from the judgment rendered by the trial court, and the judgment thus will not be disturbed insofar as it condemns Adams to pay compensation benefits, plus penalties and attorney’s fees.
For the reasons assigned, we affirm that part of the judgment appealed from which condemns defendant Adams to pay to plaintiff Broussard compensation benefits, plus penalties and attorney’s fees. We, however, reverse that part of the judgment appealed from which dismisses plaintiff’s claim against defendant, Dewey DeVillier, and judgment is hereby rendered in favor of plaintiff, John M. Broussard, and against defendant, Dewey DeVillier, condemning said defendant, in solido with James Adams, to pay to said plaintiff workmen’s compensation benefits in the sum of $49.00 per week, for a total of 100 weeks, beginning February 14, 1970, less the sum of $130.00 which represents compensation payments made, together with legal interest thereon from the date of judicial demand until paid. Defendant De-Villier also is cast, in solido with Adams, for all costs of these proceedings.
*919 The costs of this appeal are assessed to defendant-appellant, Dewey DeVillier.
Affirmed in part, reversed in part and rendered.
FRUGÉ, J., dissents.
The Trial Judge is correct.