283 So.2d 777 (1973)
Angeline PAIGE, Plaintiff-Appellant,
v.
Dennis TREGRE, Defendant-Appellee.
No. 8852.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
On Rehearing May 18, 1973.
Supplemental Opinion On Rehearing August 23, 1973.
*778 Foye L. Lowe, Jr., Baton Rouge, for plaintiff-appellant.
Robert Scott McIntosh, II, New Orleans, for defendant-appellee.
Before LOTTINGER, SARTAIN and ELLIS, JJ.
SARTAIN, Judge.
This is a suit for death benefits allegedly due under the Workmen's Compensation Law brought by Angeline Paige, widow of Philip Paige, individually and on behalf of the minor children born of the marriage, Donald, Lois and Juanita Paige. The defendant is Dennis Tregre. After trial on the merits, judgment was rendered in favor of the defendant and plaintiff has appealed. We reverse.
This suit was originally filed in forma pauperis in the eighteenth Judicial District Court, which employs no official court reporter. For this reason, there is no transcript of testimony taken at the time of the trial. See Paige v. Tregre, 262 La. 641, 264 So.2d 591 (1972). There is no written narrative of facts agreed to by the parties, nor is there a written narrative of facts made by the trial judge, as required by Articles 2130 and 2131 of the Code of Civil Procedure.
As a general rule, when the record on appeal does not contain the testimony of the witnesses, and the correctness of the judgment appealed from depends thereon, there is nothing for the appellate court to review, and the appeal is subject to dismissal. See Clark v. Richardson, 157 So.2d 325 (3rd La.App.1963). However, when such a record does contain written reasons for judgment by the trial judge which "reveals substantially all of the material testimony, and the record is sufficiently complete to permit full consideration of the issues presented on appeal", the said reasons will be considered in lieu of the narrative of facts required by Article 2131, supra. *779 Succession of Seals, 243 La. 1056, 150 So. 2d 13 (1963); and Clark v. Richardson, supra.
In the instant case the trial judge rendered written reasons for judgment which read as follows:
"Angeline Paige, widow of Philip Paige, filed suit for workmen's compensation against Dennis Tregre, individually and on behalf of her minor children, Donald Ray Paige, Lois Marie Paige and Juanita Paige, for the death of her husband, Philip Paige, who was also the father of her minor children, Donald Ray Paige, Lois Marie Paige and Juanita Paige.
"The plaintiff alleges in her petition that her husband's death arose out of and in the course of his employment as a manual laborer with Dennis Tregre who was regularly engaged in a hazardous trade, business or ranching operation, which included the operation of machinery, in connection with which he was required to perform all or a substantial part of his duties.
"The suit was filed in forma pauperis and while the testimony was taken down, same was not transcribed and the Court has only its notes and memory from which to decide this case.
"From the evidence adduced at the trial, it appears that Dennis Tregre, at the time of the accident, was a merchant who ran a store which was his principal occupation and raised a few head of cattle as a sideline. The deceased, Philip Paige, traded with Tregre at his store and owed him an account in addition to giving Tregre a bad check, which Tregre was holding. Paige was attempting to work out the debt. At the time of the alleged accident Paige had been using a power saw and had been cleaning hurricane debris on land leased by Tregre to pasture his cattle. A tree limb fell on Paige and according to the testimony of Dr. Harry Kellerman, who was called to the scene, Paige appeared to be killed from being struck by the falling tree limb.
"It further appeared from the evidence that Paige was not a regular employee of Tregre, but worked to pay a debt.
"The power saw did not touch Paige, as according to testimony it had stopped running and lay on the ground some few feet from the body. (Testimony varied as to the distance of the saw from six feet to twenty feet from the body.) The power saw was not out of gas, according to the testimony. The saw positively did not cause any injuries to Paige.
"Furthermore, Paige would request work from Tregre so that Paige could pay out his account. Tregre let him work on his own, unsupervised.
"Tregre had no regular employees. Work was done on the cattle farm by him and his sons, except during the hay season when he would employ laborers to make hay. He owned a tractor which he operated himself. However, the power saw was owned by Tregre, but Tregre stated that he did not know Paige was operating his power saw as he, Tregre, was not there when the accident occurred. Tregre found out later that his power saw was out at the scene of the accident.
"Under the Workmen's Compensation Law of the State of Louisiana cattle raising is, in the opinion of the Court, considered an agricultural occupation and is not a hazardous occupation per se.
"In view of the above reasons the Court is of the opinion that Philip Paige was not an employee of Dennis Tregre within the scope of said Workmen's Compensation law of Louisiana and, further, that he was not injured by any machinery as defined by the Workmen's Compensation law.

*780 "Therefore, it is the opinion of this Court that the plaintiff's suit on her behalf and on the behalf of her minor children against Dennis Tregre should be dismissed at her cost.
"THUS DONE AND SIGNED at New Roads, Pointe Coupee Parish, Louisiana, on this 22nd day of April, 1971."
It is apparent that the trial judge concluded that under the facts found by him, the decedent was not afforded benefits under the Workmen's Compensation Act. Taking his findings of fact as correct, we hold that the trial judge erred as a matter of law in concluding that the decedent was not entitled to such benefits.
First, an employer-employee relationship is shown. Other evidence in the record shows that the decedent was credited with $1.25 for every hour he worked. Although he worked sporadically and received no cash wages, there was an understanding that services were to be furnished and payment, in the form of credits, was to be made. Such a showing is sufficient. St. Paul Fire and Marine Insurance Company v. Richard, 208 So.2d 35 (3rd La. App.1967).
Further, from the reasons assigned, we learn that the defendant "raised a few head of cattle as a sideline". Cattle raising is, of course, a business. The law recognizes that a man can have more than one trade, business or occupation, so long as he is actively engaged in such business and it is otherwise subject to the provisions of the Workmen's Compensation Law, and injury to or death of an employee is covered thereby. Shipp v. Bordelon, 152 La. 795, 94 So. 399 (1922); Ponthieux v. Lindsay, 254 La. 647, 226 So.2d 482 (1969).
Farming, cattle raising and other agricultural pursuits are not per se hazardous. However, if the employment therein involves the use of mechanized equipment it is subject to the provisions of the act. Washington v. Harvey, 164 So.2d 379 (2nd La.App.1964); Norris v. Hargis, 77 So.2d 60 (2nd La.App., 1955); Costanzo v. Southern Farm Bureau Casualty Insurance Company, 124 So.2d 621 (3rd La.App., 1960).
The trial judge concluded that the deceased had been using a power saw and was engaged in clearing hurricane debris on land leased by the defendant as a pasture. This is sufficient to bring the deceased under the act.
However, the trial judge concluded that the deceased had not been injured by any machinery, and since agriculture is not hazardous per se, he was not an employee of defendant within the scope of the act. We hold this conclusion of law to be erroneous. It is not necessary that the mechanized equipment inflict the injury or cause the death. Norris and Costanza supra.
In brief, defendant argues that the trial judge erred in holding that Paige met his death as a result of an accident because no evidence was introduced to show that his demise was causally related to his work. We must reject this contention. First, there is included in the record a death certificate which states that the initial cause of death was internal chest injuries, fracture of the cervical vertebrae, caused by falling limbs. This death certificate can be accepted as establishing the legal cause of death. Hull v. Liberty Mutual Insurance Company, 236 So.2d 847 (1st La.App., 1970); writ denied 256 La. 862, 239 So.2d 361 (1970); R.S. 33:1561.
The record contains a statement from the Pointe Coupee Funeral Home for services rendered relative to Paige's death in the amount of $517.00.
The accident causing decedent's death occurred on April 9, 1966. Therefore, the benefits accruing to plaintiff are governed by R.S. 23:1232 and 1235 (Act No. 175 of 1948); R.S. 23:1231 (Act No. 412 of 1956); R.S. 23:1202 (Act No. 411 of 1956); and R.S. 23:1210 (Act No. 414 of *781 1956). The said statutes then in effect provided that in the event of the death of an employee, where there is a surviving spouse and two or more minor children, the maximum benefits are sixty-five percent of the employee's wages, not to exceed $35.00 per week for a period of four hundred weeks. These benefits are paid to the widow individually and on behalf of the minor children.
The deceased was being given credit of $1.25 per hour. Based on a forty hour work week, his earnings are considered to be $50.00 per week and sixty-five percent thereof is $32.50.
Accordingly, for the above reasons, the judgment of the District Court is reversed and judgment is rendered herein in favor of Angeline Paige, individually, in the amount of $517.00 for funeral expenses together with legal interest thereon from date of judicial demand, until paid, and in favor of Angeline Paige, individually and for and on behalf of the minor children, in the sum of $32.50 per week for a period not to exceed four hundred weeks, together with legal interest on each weekly payment due after April 9, 1966, until the same is paid. Defendant-appellee is cast for all costs of these proceedings.
Reversed and rendered.
ELLIS, Judge (dissenting):
I cannot agree with the conclusion reached by the majority, because I do not believe the record is sufficient to support any judgment. I cannot agree that the trial judge's reasons for judgment are sufficiently detailed as to the testimony and other evidence adduced to stand in place of a narrative of fact.
None of the testimony is detailed therein. The facts given by the trial judge are his own conclusions, and we are not enlightened as to the evidence on which they are founded. I further note that the trial took place on June 7 and July 20, 1968, and, because of delays in the filing of briefs by counsel, the reasons for the judgment were not handed down until April 22, 1971, almost three years later. The trial judge noted that he was relying only on his memory and some notes he took at the time of trial.
I agree with the conclusion of the majority that the conclusions of the trial judge justify a reversal of his judgment. To permit the judgment to stand, because there is no record to review, might result in substantial injustice. In my opinion, the case should be remanded to the trial court, so that plaintiff might pay for and file the transcript of testimony, or, alternatively, for a new trial conducted in accordance with Articles 2130 and 2131 of the Code of Civil Procedure.
I respectfully dissent.

ON REHEARING
SARTAIN, Judge.
We granted a rehearing in this cause for two principal reasons. One, there is a division of opinion in this court as to whether the written reasons for judgment handed down by the trial judge sufficiently detail the evidence adduced during the trial so that this court may properly review the same. (See the dissent in our original opinion.) Second, assuming that the written reasons of the trial judge are not mere conclusions of law, it seems patently unfair to us to reverse where the appellee strenuously argues that the facts presented at the trial on the merits do not justify a reversal when the failure to provide the transcript rests with the appellant. See Paige v. Tregre, 262 La. 641, 264 So.2d 591 (1972).
Accordingly, appellant is given forty-five days from this date to provide this court with a certified copy of the testimony taken by a public reporter engaged by appellant. This testimony is to be provided at appellant's *782 expense and to be later taxed as costs. Both parties are accorded the opportunity to file such supplemental briefs as in their opinion are deemed necessary within ten days from receipt by this court of the transcript. After these delays, we shall consider the matter re-submitted for resolution of the issues aforementioned.

SUPPLEMENTAL OPINION ON REHEARING
Following our granting appellee a rehearing, we directed appellant to furnish us with a transcript of the testimony in this cause, which has been received.
Our review of this testimony clearly supports the findings of fact expressed by the trial judge in his written reasons for judgment. For reasons stated in our original opinion, we find that Philip Paige was employed by the defendant and was engaged in an agricultural pursuit which fell within the purview of our workmen's compensation statutes.
The record further reflects that on a day about one year preceding the fatal accident giving rise to this action, decedent was performing the same type of work for the appellant. He was using appellant's chain saw then. It is also evident that he was using the chain saw on the day of the accident because the doctor arriving at the scene of the accident observed cut timbers.
Further, it is not necessary to rely on the cause of death stated in the death certificate as expressed in our original opinion. The transcript produced by appellant contains the testimony of Dr. Henry J. Kellerman, accepted by the court as an expert in the field of general medicine. Dr. Kellerman was one of the first witnesses to arrive at the scene. He stated that the decedent was face down in a crouching position beneath a large limb. A shoe had been knocked off of one of his feet and his pipe was laying near his body. The doctor could discern no pulse or heartbeat, nor could he receive any response to a light shined into the pupils of the decedent's eyes. The body was in a thicket of weeds and limbs which made it difficult to reach. The large limb was partially supported by a fork at one end so Paige's body was not mashed by the main portion of the limb, though the limb was resting across his back. After it was determined that Paige was dead, his legs were straightened and he was removed from beneath the limb.
Dr. Kellerman testified that in his opinion Paige "died of massive internal injuries of the chest caused by a falling tree striking him on the back and crushing his chest."
To counter this conclusion, appellee offered the testimony of Dr. Hansel Janet, who was accepted by the court as an expert in the field of internal medicine. Great emphasis was placed upon the death certificate which reflected that decedent had suffered a fracture of the cervical vertebrae. It was this witness's conclusion that this diagnosis could not be made without an autopsy or a more extensive post-mortem examination.
The death certificate in fact shows that death was caused by not only a fracture of the cervical vertebrae but internal injuries to the chest and these injuries were attributed to "falling limbs while at work".
We believe, as did the trial judge, that Paige did, in fact, die as a result of injuries sustained by a falling limb. Dr. Kellerman described in detail the conditions under which he found the body and the reasons for his conclusion that death was accidental.
Accordingly, for the above reasons our original decision, reversing the judgment of the district court and rendering judgment herein in favor of plaintiff, is reinstated. All costs in this matter are assessed against the appellee.
Original decree reinstated.